Jack W. CAROLAN, Appellant,

v.

William J. NELSON, Respondent.

No. WD 66930.

Missouri Court of Appeals,
Western District.

July 3, 2007.

924

David P. Chamberlain, Liberty, MO, for Appellant.

Steven C. Effertz, Independence, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Presiding Judge.

The parties executed an agreement for Mr. William Nelson to purchase Mr. Jack Carolan's land with an option for Mr. Carolan to purchase the land from Mr. Nelson "up to ten years" from the date of the agreement, May 24, 1994.[1] The agreement required that the notice of intent to exercise the option include a closing date. In addition, the notice had to be sent through registered mail no less than ninety days before the stated closing date. On April 14, 1998, Mr. Carolan assigned the option to his corporation, Summit Falls Investment Company (Summit Falls), of

---

1. The option clause states, "And Whereas, the parties desire to enter in an option agreement wherein party of the second part is granted an option to purchase the aforesaid real estate for a period of up to ten years from the date of this agreement."

which he was the sole shareholder, sole officer, and sole director. The company was administratively dissolved in 1999.

Mr. Carolan sent two letters dated April 16, 2004, and May 4, 2004, to Mr. Nelson expressing his intent to exercise the option. Only the latter letter complied with all of the terms of the option agreement, as it specified a closing date of August 10, 2004. Mr. Nelson refused to convey a merchantable fee simple title because the closing date was after May 24, 2004, the expiration date of the option.

Subsequently, Mr. Carolan petitioned the court for specific performance of the option agreement. Mr. Carolan indicated on the signature line that he was petitioning "[i]ndividually and as sole shareholder of Summit Falls ... a defunct Missouri Corporation." Among other defenses, Mr. Nelson claimed that Mr. Carolan was not the real party in interest and that he failed to exercise the option to purchase before it lapsed. A bench trial was held. Mr. Carolan provided the correspondence and contracts described above to the court and testified to the same. Mr. Nelson neither testified nor provided exhibits. At the conclusion of Mr. Carolan's case in a motion for directed verdict, Mr. Nelson requested a directed verdict or dismissal of the petition because Summit Falls was the proper party to bring the action and not Mr. Carolan. Mr. Carolan filed suggestions in opposition to the motion and a motion to amend pleadings to conform to the evidence by adding "statutory trustee" after his name.

The trial court decided in favor of Mr. Nelson and against Mr. Carolan on the petition without explanation. The record suggests that the trial court decided against Mr. Carolan either because it

found him not to be the real party in interest or because it found he failed to properly exercise the option. Mr. Carolan filed a motion for new trial. The trial court denied the motion for new trial and made no ruling on the motion to amend. Mr. Carolan appeals.

Mr. Carolan argues two points on appeal: (1) the trial court erred in denying specific performance because he was the real party in interest and because he properly exercised the option to purchase; and (2) the trial court erred in denying motion to amend because adding the phrase "statutory trustee" was not prejudicial to any party.

## Standard of Review

▪ As in any other judge-tried case, we will affirm unless the decision is against the weight of the evidence, not supported by the evidence, or erroneously applies or declares the law. *Nahn v. Soffer*, 824 S.W.2d 442, 444 (Mo.App. E.D.1991); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court did not include findings of facts in its judgment, and neither party requested them. *Nahn*, 824 S.W.2d at 444. Thus, all factual issues must be assumed to have been found in accordance with the results reached. *Id.*

## Legal Analysis

Mr. Carolan argues that the trial court ruled against him because it found that he was not the real party in interest. Rule 52.01 [2] requires that every civil action be prosecuted under the name of the real party in interest. *See also* § 507.010.

> The object of [section 507.010 and Rule 52.01] is to enable those persons to maintain the action who are directly in-

**2.** Rule references are to Missouri Rules of Civil Procedure (2006) and statutory references are to RSMo. (2000).

terested in the subject matter of the litigation and entitled to reap its fruits. In this connection, it has often been stated to be the general rule that the equitable owner of a claim may sue as the real party in interest. In order to determine the real party in interest in this case, we look to the facts as they appear on the record.

*Smith v. Cowen*, 350 S.W.2d 96, 98 (Mo. App.1961) (citation omitted).

■ Mr. Carolan is still a real party in interest, although he assigned his rights to the option. Undoubtedly, Summit Falls holds the legal rights to the option because Mr. Carolan did not assign the assignment to himself. Nor did the legal rights revert to him upon Summit Falls's administrative dissolution. *See* § 351.476.2 ("Dissolution of a corporation does not . . . [t]ransfer title to the corporation's property"). Nevertheless, Mr. Carolan holds equitable rights to the option agreement. "[E]quitable title is the right in the party to whom such title belongs to have the legal title transferred to him upon the performance of a specified condition." *Reinhold v. Fee Fee Trunk Sewer, Inc.*, 664 S.W.2d 599, 603 (Mo.App. E.D.1984). A dissolved corporation must distribute its property to its shareholders as an act of winding up. *See* § 351.476.1(4). As the sole shareholder, Mr. Carolan will receive the property when Summit Falls winds up. Thus, Mr. Carolan has equitable claim in the option agreement and is entitled to maintain the action in his own name. To the extent the trial court decided against him for not being the real party in interest, it erred.[3]

As the trial court's decision must be affirmed under any reasonable theory,

*Nahn*, 824 S.W.2d at 444, we proceed with Mr. Carolan's contention that the trial court erred in denying him specific performance because he properly exercised the option.

■ Mr. Carolan believes that the trial court ruled against him because it determined that he did not comply with the option agreement. The option agreement, in part, states, "And whereas, the parties desire to enter in an option agreement wherein party of the second part is granted an option to purchase the aforesaid real estate for a period of up to ten years from the date of this agreement." Mr. Nelson's position at trial and here is that Mr. Carolan did not completely exercise his option within the deadline because the closing date of August 10, 2004, was after the ten-year period. In his view, the land had to be purchased before the expiration date of the option. It is our belief that the trial court erroneously adopted this reasoning.

■ Missouri case law states that when the closing date is not mentioned in the option agreement, time is usually not of the essence, " 'i.e., completion of the sale prior to the termination of the option date is not required.' " *Nahn*, 824 S.W.2d at 444 (quoting *Frey v. Yust*, 516 S.W.2d 321, 324 (Mo.App.1974); *see also Estate of Schler v. Benson*, 947 S.W.2d 495, 500 (Mo.App. W.D.1997)). The *Benson* court stated:

"The reason time is not of the essence in contracts for sale of real estate is that delays are common, the injury caused by delay is minor, and performance at a later time is characterized as substantial performance. The parties view the spe-

---

3. Moreover, the motion to amend should have been granted if the trial court determined that Mr. Carolan was not the real party in the interest. *City of Wellston v. SBC Commc'ns, Inc.*, 203 S.W.3d 189, 194 (Mo. banc 2006) (stating improper party on pleading caption should have been substituted with proper party through an amendment under Rule 52.06 rather than the case being dismissed).

cific date set for closing as a goal, and not as a deadline."

947 S.W.2d at 501 (internal citation omitted). Hence, there was no requirement that the purchase be within ten years, as no closing date was mentioned.

■ Mr. Carolan, however, was required to exercise the option "in strict accordance with its expressly stated terms and conditions." *HGS Homes, Inc. v. Kelly Residential Group*, 948 S.W.2d 251, 255–56 (Mo.App. E.D.1997). Also, his acceptance of the offer had to be "unequivocal and certain." *Frey*, 516 S.W.2d at 324. "Upon [Mr. Carolan]'s acceptance the option becomes a complete bilateral contract, supported by mutual promises, and is specifically enforceable." *Wilson v. Edwards*, 560 S.W.2d 608, 612 (Mo.App.1978).

■ The terms required Mr. Carolan to include a closing date in his notice of intent to exercise the option and send the notice through registered mail no less than ninety days before the stated closing date. Although the first notice sent through registered mail did not include a closing date, the second notice did. It was also sent through registered mail before the option expired and ninety days before the closing date. In addition, the second letter included a request for merchantable fee simple title, a closing agency, and a prospective purchase price, so that his acceptance was clear and unequivocal. Mr. Carolan's acceptance of the option to purchase within ten years created a bilateral contract, and Mr. Nelson's refusal to perform was a breach of that contract. Therefore, the trial court erred in denying specific performance.

In conclusion, the decision is reversed and remanded for the trial court to enter judgment against Mr. Nelson and order him to sell the land to Mr. Carolan according to the option agreement.

JAMES M. SMART and RONALD R. HOLLIGER, JJ. concur.